# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

TERRI L. KALMBACH

    Plaintiff,

v.     CASE NO. 08-CV-13214

COMMISSIONER OF     DISTRICT JUDGE THOMAS L. LUDINGTON
SOCIAL SECURITY,     MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

**II.     REPORT**

    **A.     Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for disability benefits. The matter is before the court on cross motions for summary judgment. (Docs. 8, 13.)

Plaintiff was 49 years of age at the time of the most recent administrative hearing and has completed a high school education. (Transcript, Doc. 7 at 438.) Plaintiff's relevant work history includes sixteen years' work as an office manager and accounting clerk. (Tr. at 66, 439.)

Plaintiff filed the instant claim on August 3, 2005, alleging that she became unable to work on April 27, 2005. (Tr. at 40-44.) The claim was denied at the initial administrative stages. (Tr. at 33.) In denying Plaintiff's claim, the Defendant Commissioner considered chronic fatigue syndrome and diabetes as possible bases of disability. (*Id.*)

On November 8, 2007, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Bennett S. Engleman, who considered the case *de novo*. In a decision dated February 7, 2008, the ALJ found that Plaintiff was not disabled. (Tr. at 12-22.) Plaintiff requested a review of this decision on February 21, 2008. (Tr. at 11.)

The ALJ's decision became the final decision of the Commissioner when, on June 11, 2008, (Tr. at 3-5), the Appeals Council denied Plaintiff's request for review. Plaintiff filed suit seeking judicial review of the Commissioner's unfavorable decision on July 25, 2008. (Doc. 1.)

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with

observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540).  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and

6

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that, for a number of years, Plaintiff was seen on a regular basis by Dr. Vladimir Ognenovski, M.D., and the University of Michigan Medical Center. In a series of letters to Plaintiff's family physician, Dr. Ognenovski summarized his treatment of Plaintiff for fibromyalgia and other conditions.

In May 2003, the doctor reported that Plaintiff exercised regularly and was at that time working on a full-time basis. (Tr. at 187.) The doctor reported no swelling or redness nor loss of mobility in any joint. (*Id.*) The doctor noted that Plaintiff was moderately overweight. (*Id.*) Although Plaintiff reported pain in a number of areas, the doctor reported that Plaintiff evidenced normal strength. (*Id.*) The doctor felt that Plaintiff's fibromyalgia was clinically stable. (*Id.*)

In early September 2003, the doctor reported that a "focused musculoskeletal examination" revealed full mobility in all joints without any deformity. (Tr. at 185.) Plaintiff was found to be intact neurologically and strength was found to be normal without sensory deficits. (*Id.*) Plaintiff's fibromyalgia was described as "baseline." (*Id.*)

In February 2004, Dr. Porter noted that Plaintiff "does have trigger finger phenomenon in her right index finger and this appears to be mild." (Tr. at 183.) The remainder of Plaintiff's neurological examination was described as "unremarkable." (*Id.*) Fibromyalgia was again described as "baseline." (*Id.*)

In July 2005, Plaintiff was seen for pain in the left knee. (Tr. at 177.) The doctor noted that Plaintiff did not report any locking or "give away sensation" in the joint. Plaintiff received a

corticosteroid injection to the knee joint. (*Id.*) The doctor suggested a course of physical therapy for the knee. (Tr. at 178.)

In October 2005, Plaintiff was again seen by the doctor. He reported that "focused musculoskeletal exam reveals full mobility in the upper extremities," although Plaintiff described soft tissue tenderness in multiple areas. (Tr. at 174.) While Plaintiff described tightness in her hips, the doctor found full mobility in the hips, knees, ankles and feet. (*Id.*) The doctor described Plaintiff as morbidly obese and de-conditioned. (*Id.*) The doctor recommended a regular exercise program which he characterized as "of paramount importance[.]" (Tr. at 175.)

In early March 2006, Plaintiff was seen for pain in the left knee and ankle. (Tr. at 172.) The doctor found no swelling, warmth, or redness, and the Plaintiff recounted no locking or give-away sensation. (*Id.*) Although Plaintiff reported that she was fatigued, she also recounted that she was sleeping better since the prescription of a CPAP machine. (*Id.*) Examination of Plaintiff's left knee revealed mild hyper-extension, but the doctor reported that Plaintiff was able to fully flex the knee with relative ease. (*Id.*) The right knee, both ankles, the feet and the upper extremities were described as "unremarkable." (*Id.*) Fibromyalgia symptoms were again described as "baseline." (*Id.*) The doctor continued to prescribe regular exercise and "strongly encouraged" Plaintiff to begin a weight-loss program. One month later, Plaintiff received another localized corticosteroid injection to the left knee. (Tr. at 170.)

In October 2006, the doctor reported that Plaintiff again displayed full mobility in all joints, although accompanied by complaints of soft tissue tenderness. (Tr. at 143.) Strength was again described as normal and the doctor found no evidence of laxity or instability of the joints. (*Id.*)

In January 2007, Plaintiff was seen for complaints of swelling in the left knee. (Tr. at 139.) She reported no locking or give-away sensation. Plaintiff was again characterized as morbidly

overweight, with her weight being 343 pounds. (*Id.*) Plaintiff also complained of pain in her right elbow. The doctor found full flexion and extension of the joint without warmth or swelling. (*Id.*) Plaintiff's hips displayed full mobility, however, the doctor felt that Plaintiff's left hip might be slightly swollen. (*Id.*) Both knees exhibited full range of motion. (*Id.*) The doctor aspirated a small amount of fluid from the elbow. (Tr. at 140.) The doctor advised Plaintiff to rest the knee for one week and then gradually resume activities including strengthening exercises. (*Id.*) The doctor again encouraged Plaintiff to lose weight. (*Id.*)

Plaintiff was seen by the doctor again in July 2007, and he described her condition since her last visit as "overall stable." (Tr. at 136.) Plaintiff described some discomfort in her thighs and some numbness in her right leg, but with no weakness in that leg. (*Id.*) The doctor found full range of motion Plaintiff's upper extremities. Full range of motion was also found in the knees, hips, ankles and feet. (*Id.*) Plaintiff's left knee displayed what the doctor described as "subtle soft tissue swelling[.]" (*Id.*) Plaintiff's fibromyalgia was again described as "baseline." The doctor stated that Plaintiff was "very comfortable and functional." (*Id.*) The doctor again encouraged Plaintiff to undertake a weight reduction program. (*Id.*) X-rays of Plaintiff's left knee taken the same day showed no evidence of fracture or dislocation, although some moderate joint space narrowing was seen. (Tr. at 134.)

Approximately three weeks before the administrative hearing, Dr. Ognenovski completed a "fibromyalgia impairment questionnaire." The doctor noted that he had seen Plaintiff on a regular basis since May 2001. (Tr. at 97.) The doctor described generalized soft tissue pain, particularly in the hips, knees and shoulders. He also noted Plaintiff's morbid obesity and that she was deconditioned. (*Id.*) The doctor stated that he had previously ordered CBC tests, a biochem profile, and bone scans, all of which were normal. (Tr. at 98.) The doctor also described an MRI

9

of the cervical spine which showed only minimal degenerative changes. (*Id.*) The doctor stated his belief that Plaintiff could sit for one to two hours at a time, stand for one hour at a time and lift and carry up to 10 pounds on an occasional basis. (Tr. at 100.)

At the administrative hearing, Plaintiff described her work (Tr. at 438-440), noting various changes in her duties which had taken place over time, and stated that during the last year of her employment, her primary task was to answer the telephone. (Tr. at 440.) A Vocational Expert ("VE") also testified. She characterized Plaintiff's work, particularly during the last months of her employment, as a "reception clerk type position," which she described as sedentary and semi-skilled. (Tr. at 456-57.) The VE also stated that a job of this nature could be done either sitting or standing. (Tr. at 458.)

### E. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since April 2005. (Tr. at 16.) At step two, the ALJ found that Plaintiff's obesity, asthma, diabetes, and sleep apnea were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 19.) At step four, the ALJ found that Plaintiff could perform her previous work as a receptionist. (Tr. at 22.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of sedentary work. (Tr. at 22.)

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a

> sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Social Security Ruling 83-10 clarifies this definition, explaining that:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

S.S.R. 83-10, 1983 WL 31251, at *5 (1982).

After review of the record, I suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's disability analysis to Plaintiff's claim.

## 2. Return to Prior Work

As mentioned, the ALJ concluded that Plaintiff had the ability to return to her prior work. (Tr. at 22.) This finding ended the ALJ's disability inquiry because Plaintiff could not make out a prima facie showing of disability as she could return to her previous work.

The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

In determining the level of exertion required by prior work, the testimony of the VE should be compared to the *Dictionary of Occupational Titles* ("DOT"), 201.362-014 (1991), available at

11

1991 WL 688174. *See Bauer v. Barnhart*, 168 Fed. App'x 719 (6th Cir. 2006). Simply asking the VE if his testimony is consistent with the DOT satisfies the requirements under Social Security Regulation 00-4p. *Martin v. Comm'r of Social Security*, 170 Fed. App'x 369, 375-76 (6th Cir. 2006). The job categories of the DOT can be overcome by evidence, often in the form of the claimant's own testimony, demonstrating that the particular duties of the claimant's prior work were not those envisioned by the framers of the DOT. *Carter v Secretary of HHS*, 834 F. 2d 97 (6th Cir. 1987.)

### 3. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

On this record, although there is evidence to the contrary, I nonetheless suggest that substantial evidence supports the ALJ's residual functional capacity assessment as well as his conclusion that Plaintiff could return to her prior work, particularly as she described it in the last months she worked. The ALJ's findings are consistent with the objective medical evidence of record. Dr. Ognenovski repeatedly found that Plaintiff possessed full range of motion in her joints (Tr. at 136, 139, 143, 172, 74, 185) and normal strength. (Tr. at 143, 185, 187.) Approximately four months prior to the administrative hearing, the doctor characterized Plaintiff as "very comfortable and functional." (Tr. at 136.) In the fibromyalgia questionnaire submitted only weeks before the administrative hearing, the doctor recounted findings relating to Plaintiff's physical

12

abilities consistent with the ALJ's residual functional capacity assessment. (Tr. at 100.) The doctor noted a series of tests and x-rays which were either negative or showed only minimal degenerative changes. (Tr. at 98.) The doctor's records consistently described Plaintiff's fibromyalgia as "baseline." (Tr. at 136, 172, 183, 185, 187.) Moreover, the doctor repeatedly encouraged Plaintiff to engage in regular exercise (Tr. at 136, 139, 172, 178), and on one occasion characterized this as of "paramount importance[.]" (Tr. at 175.)[2]

Counsel for Plaintiff points to notations made in the fibromyalgia impairment questionnaire to the effect that Plaintiff had difficulty concentrating. (Tr. at 100, 102.) However, a review of the doctor's records indicates only one notation that Plaintiff was concerned about her memory (Tr. at 185) and this notation is not repeated in any subsequent report. Although Dr. Ognenovski stated in the questionnaire that Plaintiff was incapable of even low stress work (Tr. at 100,) his records contain no findings consistent with any pattern of mental impairment. Indeed, the doctor consistently found Plaintiff "does not feel depressed." (Tr. at 143, 172, 187.) Counsel also points to statements made by the doctor to the effect that Plaintiff is totally incapacitated and that she should apply for disability. (Tr. at 100, 102, 173, 175.) While it is well settled in this circuit that a treating physician's opinion, when based upon objective evidence, is accorded significant weight, *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985); *King v. Heckler*, 742 F.2d 968 (6th Cir. 1984); *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048 (6th Cir. 1983); *Reed v. Sec'y of Health & Human Servs.*, 804 F. Supp. 914 (E.D. Mich. 1992); it is equally clear that vocational opinions

---

[2] The record is unclear as to whether Plaintiff in fact complied with these directives. It has been held in this district that the failure to follow a prescribed course of treatment which could restore the ability to work is a proper ground for the denial of benefits. *Hamilton v. Sec'y of Health & Human Servs.*, No. 91-CV-73589, 1992 WL 346304 (E.D. Mich. Aug. 25, 1992) (Rosen, J.).

13

are beyond the scope of a physician's expertise. *Casey v Secretary of HHS*, 987 F.2d 1230, 1234-35 (6th Cir. 1993).

The ALJ failed to find Plaintiff's complaints of disabling pain fully credible. Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b) (1995); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c) (1995); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.* When weighing credibility, an ALJ may also give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at **3 (6th Cir. Feb. 11, 1999).

In the present case, the ALJ acknowledged that Plaintiff had an impairment that could cause pain; however, he found that the severe and debilitating nature of Plaintiff's alleged pain was not fully credible and provided reasons for this conclusion. The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility

of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Under this standard, I suggest that there is an insufficient basis on this record to overturn the ALJ's credibility determination.[3]

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is well within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

---

[3] Counsel for Plaintiff has attached "comments" to his motion that are said to have been made by the Appeals Council as part of its decision-making process. (Doc. 8 at 6 n.3.) However, it is clear in this circuit that since these "comments" are not part of the administrative record, they are not before this Court. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).

15

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

 

|  |  |
|---|---|
|  | s/ *Charles E Binder* |
|  | CHARLES E. BINDER |
| Dated: April 2, 2009 | United States Magistrate Judge |

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served upon counsel of record via the Court's ECF System and served on District Judge Ludington in the traditional manner.

| | |
|---|---|
| Date: April 2, 2009 | By   s/Patricia T. Morris |
| | Law Clerk to Magistrate Judge Binder |